## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF THE STATE OF OKLAHOMA

| | | |
|---|---|---|
| 1. **TABATHA BARNES** | ) | |
| 2. **TERRI MORRIS** | ) | |
| 3. **SYRITA BOWEN** | ) | |
| 4. **CARLA JOHNSON** | ) | |
| 5. **KALA LYLES** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIV-16-184-F** |
| | ) | |
| 1. **THE CITY OF OKLAHOMA,** | ) | |
| **a municipal corporation** | ) | |
| 2. **DANIEL HOLTZCLAW** | ) | |
| 3. **BILL CITTY** | ) | |
| 4. **BRIAN BENNETT** | ) | |
| 5. **ROCKY GREGORY** | ) | |
| 6. **JOHN AND JANE DOES,** | ) | |
| **All in their individual capacity.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW,  Plaintiffs Tabatha Barnes, Syrita Bowens, Terri Morris, Carla Johnson, and Kala Lyles, by and through their attorneys of record *Benjamin Crump* of **Parks and Crump**, and  *Damario Solomon-Simmons* and  *Melvin C. Hall* of **Riggs, Abney, Neal, Turpen, Orbison & Lewis**, and for their causes of action herein allege and states as follows:

## INTRODUCTION

This civil rights action seeks damages from individual police officers and from the City of Oklahoma City, Oklahoma for violations of Plaintiffs' fourth and fourteenth amendments  under the United States Constitution, federal statutory civil rights under 42

U.S.C. §§ 1983 and 1985.3, the Oklahoma Constitution under art. II § 30, and the Oklahoma Governmental Torts Claims Act under 51 O.S. § 151 in connection with the unlawful force, stops, arrests, searches, and physical and sexual assaults against Plaintiffs. Plaintiffs are five of at least fourteen African-American women illegally and unlawfully stalked, stopped, arrested, and physically and sexually assaulted. Daniel Holtzclaw ("Holtzclaw") was found guilty and sentenced to 263 years in prison for his actions, and his crimes prompted national public outrage and on-going extensive international media coverage.  Plaintiffs seek by means of this civil rights action to hold accountable those responsible for the unlawful force, stops, arrests, searches and physical and sexual assaults Plaintiffs suffered and to challenge the Defendants unconstitutional practices. Accordingly, this civil rights action is firmly in the public interest.

## JURISDICTION,  VENUE, AND PARTIES

1.  Jurisdiction in this matter is based upon the existence of a federal question pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367.

2.  All of the acts complained of occurred in the Western District of  Oklahoma and all of the Defendants may be served in Oklahoma County; therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

3.  Plaintiff Tabitha Barnes, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and a resident of Oklahoma City, Oklahoma.

4.  Plaintiff Syrita Bowen, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and a resident of Oklahoma City, Oklahoma.

5.   Plaintiff Terri Morris, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and a resident of Oklahoma City, Oklahoma.

6.   Plaintiff Carla Johnson, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and a resident of Oklahoma City, Oklahoma.

7.   Plaintiff Kala Lyles, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and a resident of Oklahoma City, Oklahoma.

8.   Defendant Holtzclaw, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and a commissioned law enforcement officer employed by the city of Oklahoma City, Oklahoma with the authority to act under color of Oklahoma law to make arrests and otherwise enforce the laws of the City of Oklahoma City and the State of Oklahoma.

9.   Defendant Citty, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and Chief of Police for the city of Oklahoma City, Oklahoma, and is the final policy maker for the OKC, with the authority to hire, train, supervise and discipline the officers under his command.

10. Defendant Bennett, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and was employed by the City of Oklahoma City, Oklahoma where he supervised Holtzclaw and otherwise acted under the authority of color of Oklahoma law.

11. Defendant Gregory, at all times relevant to the claims alleged herein, was a citizen of the State of Oklahoma and was employed by the City of Oklahoma City, Oklahoma

where he investigated sex crimes and otherwise acted under the authority of color of Oklahoma law.

12. Defendant City of Oklahoma City ("OKC") is a municipal corporation located within the State of Oklahoma and existing by virtue of the laws, Constitution and Statutes thereof. At all times relevant to the allegations in this Compliant, OKC was the employer of Defendants Holtzclaw, Citty, Bennett, Gregory, and John and Jane Does.

13. Defendants John and Jane Does, in their individual capacities, at all times relevant to the allegations in this complaint, were employed by OKC. John and Jane Does were directly involved in the hiring, training, monitoring, observing, supervising, disciplining, retaining, and/or controlling Holtzclaw.

## STATEMENT OF THE CASE

14. On December 10, 2015, former Oklahoma City Police Department ("OKPD") officer Holtzclaw was found guilty of multiple counts of rape, sexual battery, lewd acts, and oral sodomy, perpetrated against poor, disenfranchised African-American women. All of the women were attacked in the predominately African-American neighborhoods of Northeast Oklahoma City, Oklahoma. On January 21, 2016, Holtzclaw was sentenced to 263 years as punishment for his heinous crimes.

15. Holtzclaw's actions were part of a common pattern and practice of sexually assaulting African-American females whom he identified as vulnerable to his sexual abuse and whom he believed would either be reluctant or unwilling to come forward or who would not be believed if they did come forward.

16. The danger of sexual assault by police officers is well known and has been the subject of papers and studies by the International Association of Chiefs of Police, of which the OKC police department is a member.

17. Plaintiffs are five of at least fourteen women attacked by Holtzclaw and on information and belief, at the time of Plaintiffs' illegal detention, arrest, and physical and sexual assault, Defendants OKC, Bill Citty ("Citty"),  Brian Bennett ("Bennett"), Rocky Gregory ("Gregory"), and others knew or had reason to know that Holtzclaw had a pattern, practice, and custom of illegally detaining, arresting, and committing physical and sexual assaults, battery and intimidation against African-American citizens under the protection of the OKC through the misuse of his position as a police officer, yet showed deliberate indifference to the threat that Holtzclaw posed to the predominately African-American community that Defendants  assigned Holtzclaw to patrol.

18. Defendants acting under the color of state law deprived Plaintiffs of her constitutional right to bodily integrity.

19. Defendants should have been monitoring Holtzclaw's conduct and had knowledge of the activities because citizens had publicly accused or reported to OKC that Holtzclaw was using or participating in unlawful force, stops, arrests, and searches and/or sexual assaults against African-Americans before Holtzclaw's attacks on Plaintiffs Tabitha Barnes ("Plaintiff Barnes"), Syrita Bowen ("Plaintiff Bowen"),  Terri Morris ("Plaintiff Morris"), Carla Johnson ("Plaintiff Johnson"), and Kala Lyles ("Plaintiff Lyles") as follows:

a.  Holtzclaw caused the death of Clifton Darnell Armstrong ("Armstrong"), an African-American male resident of Oklahoma City, Oklahoma on or about May 1, 2013. Specifically, Holtzclaw unnecessarily attacked, beat, hog-tied, and obstructed Armstrong's ability to breathe resulting in his death.  Armstrong's death resulted in a tort claim notice on or about July 13, 2013, and a lawsuit which was filed on or about April 2, 2014.  The tort claim notice was pending at the time of Holtzclaw's assaults on the Plaintiffs. Such notice warranted Holtzclaw being removed from his duties patrolling the street or at least given close scrutiny and monitoring.

b.  On or about November 5, 2013, Defendants were notified Defendant Holtzclaw illegally detained, arrested, victimized by unlawful force, and sexually assaulted an African-American female named Demetria M. Campbell ("Campbell"), without provocation, probable cause, or justification[1]:

i.  Campbell was in Oklahoma City, Oklahoma visiting her daughter who was receiving treatment at Oklahoma University Medical Center Hospital ("OU Medical Center") for terminal cancer. At the request of her terminally ill daughter, Campbell left the hospital to purchase a fish dinner at a local establishment, TJ's Seafood Restaurant, located on the predominately African-American Northeast side of Oklahoma City.

---

[1] In their *Answer of Defendants City of Oklahoma City to Plaintiff's Amended Petition* in Ligons v. Holtzclaw, et al., CIV-15-1112-HE, Defendant Oklahoma City admits that it received Campbell's November 5, 2013, complaint against Defendant Holtzclaw in their ¶7a.

ii.  When she arrived at TJ's, Campbell exited her vehicle and began to walk up to the restaurant when suddenly Holtzclaw violently grabbed Campbell and shoved her toward the bricked restaurant building.

iii. Holtzclaw slammed Campbell's face and head against the brick wall and pressed his crotch area against her backside while exhibiting an obvious erection that Campbell could feel.

iv. Defendant Holtzclaw then handcuffed Campbell and threw her into the back of his police car. At no time did Plaintiff threaten Holtzclaw, nor did she make any threatening gesture or exhibit any aggression towards him.

v.  Campbell prayed, pleaded, and sobbed as Holtzclaw drove her around Oklahoma City while handcuffed in the backseat of his patrol vehicle through various parts of the city, including stopping behind a store.  Campbell, fearing that she was about to be raped, urinated on herself in a desperate attempt to dissuade Holtzclaw from raping her. After some time, Holtzclaw took Campbell, handcuffed and urine soaked, back to TJ's and released Campbell without filing any charges.

vi. Immediately after Holtzclaw's attack, Campbell returned to OU Medical Center and sought treatment for her injuries which included cuts and abrasions to her face. One of the nurses called the OKC Police Department and demanded that a supervisor come to the hospital to address Holtzclaw's assault on Campbell.

vii. Thereafter, Defendant Bennett of the OKC Police Department arrived and took a statement from Campbell wherein Campbell vividly described the encounter with Holtzclaw including providing the location of where the illegal arrest and detention occurred, how the assault occurred, and the physical characteristics and name of Holtzclaw.

viii.   After speaking with Campbell and taking her statement and contact information, Bennett apologized to Campbell, stated he would "look into" the matter and get back with Campbell and then left the hospital. Clearly, Holtzclaw should have been placed on "desk duty" and "taken off the street" pending completion of Bennett's investigation of Campbell's November 5, 2013 complaint.

ix. Campbell was never contacted again by Bennett or anyone else from OKC.

x. Despite Campbell's documented November 5, 2013, complaint, Defendants covered up Holtzclaw's attack on Campbell and did not investigate, check, or review the numerous systems and evidence available to them, including, but not limited to, Holtzclaw's GPS, computer access, and contact logs. Further, Defendants did not even question Holtzclaw regarding Campbell's complaint that he violated her constitutional rights by unlawfully detaining, arresting, and physically and sexually assaulting her.

xi. Campbell was in fact the first known African-American female that Holtzclaw sexually assaulted. Had Defendants responded to her complaint, none

8

of the subsequent 13 African-American females would have been assaulted by Holtzclaw.

20. Defendants could have and should have prevented Holtzclaw from attacks upon Plaintiffs Barnes, Morris, Bowen, Johnson, and Lyles, but deliberately ignored and displayed a patter practice and custom of disregarding the previous credible complaints against Holtzclaw discussed above and the available systems, databases, records, information, and evidence readily available for Defendants to track, supervise, and monitor all Holtzclaw's whereabouts, activities, and behavior.

21. Upon information and belief, on or about May 8, 2014, the sex crimes division of the OKC Police Department opened an investigation into Holtzclaw, but permitted him to continue working the overnight shift in the predominately African-American neighborhoods of Northeast Oklahoma City without adequate supervision or monitoring.

22. Holtzclaw should have been placed on "desk duty" and "taken off the street" until the completion of OKC Police Department sex crimes division's investigation that opened on or about May 8, 2014.

23. Holtzclaw was not taken "off the street," during the OKC Police Department Sex Crimes Division's investigation that according to OKPD Detective Kim Davis, began on May 8, 2014.[2] Despite opening an investigation, OKC still refused to properly monitor and

---

[2] In her August 22, 2014 *Affidavit and Application for Arrest Warrant and the Arrest Warrant for the Person of Daniel Holtzclaw*, filed Oklahoma County District Court, Detective Kim Davis states "On May 8, 2014, an investigation began in the sex crimes unit in reference to the above named defendant [Holtzclaw], an Oklahoma City Police Officer, sexually assaulted different women. During the investigation Detective Rocky Gregory

supervise Holtzclaw's conduct. OKC was deliberately indifferent to Holtzclaw's pattern of unlawfully stalking, arresting, searching, and sexually assaulting poor, disenfranchised, African-American women in the predominately African-American neighborhoods of Northeast Oklahoma City including Holtzclaw's unlawful stop, arrest, search, and sexual assault of Plaintiff  Morris before his attacks on Plaintiffs Carla Johnson ("Johnson") and Kala Lyles ("Lyles") as follows:

   a.   On or about May 11, 2014, Plaintiff Morris reported to Oklahoma City Police Department Sex Crimes Detective Sgt. Rocky Gregory that Defendant Holtzclaw had committed a sexual assault against her on or about May 8, 2014 as follows[3]:

      i.   Plaintiff Morris was walking home, when Defendant Holtzclaw stopped and arrested Morris. Holtzclaw placed Morris in the back seat of his police car, returned to the driver's seat and ran Morris' name for warrants.

      ii.   After a few minutes, Holtzclaw exited the police car and opened the back door of the vehicle. Morris was detained in the back seat of the vehicle.  Defendant Holtzclaw ordered Morris to pull down her pants and to pull up her shirt.  Morris complied and exposed herself to Holtzclaw as directed.

      iii. Holtzclaw then exposed his erect penis to Morris, and forced Morris to perform oral sex on him.

---

spoke with victim T.M. [Plaintiff Morris], who advised she was assaulted by the above named defendant."
[3] In their *Answer of Defendants City of Oklahoma City to Plaintiff's Amended Petition* in Ligons v. Holtzclaw, et al., CIV-15-1112-HE, Defendant Oklahoma City admits that it received Morris' complaint against Defendant Holtzclaw, in their ¶7h.

iv. Holtzclaw then returned Morris to the back seat of his police car, and drove Morris to an open field. Petrified and unaware of what was going to happen, Morris hysterically pleaded for Holtzclaw to let her go. After Morris had begged for a few minutes, Holtzclaw drove Morris back to the location where he picked her up and let her go.

24. Holtzclaw's illegal stops, arrests, excessive force, and sexual assaults against Plaintiff took place during his assigned working hours and while the location of his vehicle could have been determined through GPS and his activities could have been monitored via Holtzclaw's contact logs, and radio call-ins.

25. During the time period that Holtzclaw sexually assaulted Plaintiffs, and both before and after the assaults on the Plaintiffs, Holtzclaw committed similar assaults on at least seven additional African-American females during a time when OKC had actual and/or constructive notice of the threat Holtzclaw posed to OKC African-Americans in general and African-American women specifically in the predominately African-American community he patrolled, including actual or constructive knowledge that:

a. On or about December 20, 2014, Holtzclaw sexually assaulted and brutalized Shardayreon Hill ("Hill"), and threatened Hill with further retaliation if she notified any person or entity of the assault.

b. On or about January 9, 2014, Holtzclaw stalked Hill at her home and exposed his erect penis to her, and pressured her to have sex with him.

c. On or about March 14, 2014, without provocation or probable cause, Holtzclaw stopped and arrested Carla Raines. While Holtzclaw held Raines in his custody,

Holtzclaw illegally searched, sexually assaulted, and used unlawful force against Raines.

d.  On or about April 1, 2014, without provocation or probable cause, Holtzclaw stopped, and arrested a female identified as R.G. While Holtzclaw held R.G. in his custody, Holtzclaw illegally searched, sexually assaulted, raped, and used unlawful force against R.G.

e.  On or about April 14, 2014, without provocation or probable cause, Holtzclaw stopped and arrested a female identified as F.M. While Holtzclaw held F.M. in his custody, Holtzclaw illegally searched, sexually and physically assaulted, and used unlawful force against F.M.

f.  On or about April 25, 2014, Holtzclaw raped and sexually assaulted a female identified as R.C.

g.  On or about May 8, 2014, without provocation or probable cause, Holtzclaw stopped and arrested a female named Sherry Ellis. While Holtzclaw held Ellis in his custody, Holtzclaw illegally searched, sexually assaulted, raped, and used unlawful force against Ellis.

h.  On or about June 17, 2014, without provocation or probable cause, Holtzclaw stopped, and arrested a female identified as A. While Holtzclaw held A. in his custody, Holtzclaw illegally searched, raped, sexually assaulted, and used unlawful force against A.

i.  On or about June 18, 2014, without provocation or probable cause, Holtzclaw stopped and arrested a female named Jannie Ligons. While Holtzclaw held Ligons in

his custody, Holtzclaw illegally searched, sexually assaulted, and used unlawful force against Ligons.

26. By virtue of the credible complaints made by Campbell and Morris (complaints that the City has acknowledged and admitted receiving) which should have caused the City to open an investigation of Holtzclaw, the Defendant City knew or had reason to know of the dangerous activities of its servant prior to the time of Holtzclaw's unlawful arrests, searches, and physical and sexual assault of the Plaintiffs.

27. By showing deliberate indifference and displaying a pattern, practice, and custom of ignoring the dangers posed by Holtzclaw after receiving information which would alert them to said dangers, and by permitting Holtzclaw to continue to act as an active police officer wearing the uniform and authority of the City and armed with lethal force, all Defendants named herein are responsible for the illegal arrest, search, unlawful force, and sexual and physical assaults Plaintiffs suffered and are legally liable to Plaintiffs for the damages, injuries and losses they have and will in the future sustain as a result.

28. Defendants are liable for the actions of Holtzclaw in that Defendants were deliberately indifferent to the threat posed by Holtzclaw and created a targeted danger for African-Americans, including Plaintiffs.

29. In doing the acts and/or failing to act as described herein, Defendant Officers were acting on the implied and/or actual permission and consent of OKC.

30. The true names of Defendants John and Jane Does, inclusive are unknown to Plaintiffs, who therefore sues these Defendants by such fictitious names.  Plaintiffs will seek to amend this complaint to show the names and capacities of these Defendants when

they have been ascertained.  Each of the fictitious named Defendants are responsible, in some manner, for the conduct and liabilities alleged herein.

31. As the direct consequence of their own actions, Defendants damaged the Plaintiffs by causing them to suffer extreme physical, mental, and emotional distress as well injuring their constitutional rights and their interest in personal safety and security.

## STATEMENT OF FACTS

32. Plaintiff incorporates paragraphs 1 through 31 herein as if fully set forth verbatim.

33. On or about the February 27, 2014, March 25, 2014, and April 15, 2014, Holtzclaw unlawfully stalked, detained, arrested, searched, and sexually and physically battered Plaintiff Barnes as follows:

a.   On or about February 27, 2014 around 11:30 p.m., Plaintiff Barnes was sitting in a car with her two daughters and a friend when Holtzclaw and another police officer approached the car.  Both Holtzclaw and the other officer ordered the women to exit the car without provocation or probable cause. Holtzclaw placed Plaintiff Barnes in the backseat of Holtzclaw's police car, and Plaintiff Barnes's friend was placed in the other officer's car.  After a couple of minutes, Plaintiff Barnes saw her friend released from custody by the other officer and moments later the other officer drove off and left the scene.  Now alone with Plaintiff Barnes, who was detained alone in his backseat, Holtzclaw sexually assaulted Plaintiff Barnes.  Holtzclaw asked Plaintiff Barnes if she had any drugs under her shirt.  Plaintiff Barnes told Holtzclaw that she did not have any drugs in her possession. Holtzclaw then ordered Plaintiff Barnes to lift up her shirt and, fearing retaliation if she did not comply, Plaintiff Barnes reluctantly lifted her shirt and

14

exposed her naked breasts to Holtzclaw.  Holtzclaw then asked Plaintiff Barnes if there was anything under her breasts, and fondled Plaintiff Barnes's naked breasts. Holtzclaw then released Plaintiff Barnes from custody.  Plaintiff Barnes ran into her house.

  b.  On or about March 25, 2014, when Plaintiff Barnes entered the driveway at her house she found Holtzclaw sitting on her front porch.  Once Holtzclaw saw Plaintiff Barnes, he ordered her to "come here" and, without provocation or probable cause, immediately arrested Plaintiff Barnes and placed Plaintiff Barnes in the backseat of his police cruiser.  While Holtzclaw detained Plaintiff Barnes in the back seat of his police cruiser, Holtzclaw forced Plaintiff Barnes to once again expose her breasts to him. Holtzclaw also forced Plaintiff Barnes to expose her genitals to him.

  c.  On or about April 15, 2014, Holtzclaw came to Plaintiff Barnes' house uninvited and demanded admittance to Plaintiff Barnes' house. Plaintiff Barnes refused to open the door for Holtzclaw and asked Holtzclaw to stop coming to her home and to stop harassing her.  Traumatized by Holtzclaw's continuous stalking and harassment, Plaintiff Barnes and her children moved out of their home and neighborhood.

34. On or about May 8, 2014, without provocation or probable cause, Holtzclaw stopped and arrested Plaintiff Bowen. While Holtzclaw held Plaintiff Bowen in his custody, Holtzclaw illegally detained, arrested, searched, used unlawful force and sexually and physically assaulted Plaintiff Bowen as follows:

  a.  On the night of May 8, 2014, Bowen was walking alone when Holtzclaw stopped Bowen. Holtzclaw asked Bowen where she was coming from, where she was going, and demanded to see Bowen's identification.   Plaintiff Bowen showed Holtzclaw her

identification.  Holtzclaw asked Plaintiff Bowen if she was in possession of anything illegal, and she stated that she did not have possession of anything illegal. Despite Plaintiff Bowen's response, Holtzclaw got out his car, forced Bowen into the back seat of the police cruiser, and ran her name for outstanding warrants.

b.  After Holtzclaw learned that Bowen did not have any outstanding warrants, he drove her to a secluded location known as "Dead Man's Curve" where Holtzclaw gave Bowen a shocking ultimatum: either provide Holtzclaw oral sex and intercourse or go to jail. Holtzclaw forced Bowen to provide him oral sex, and he raped Bowen. Afterwards, Holtzclaw opened the back door of his police cruiser and asked Bowen "do you know where you are…it's about time for me get off duty…can you make it from here?" and sped off.

35. On or about May 8, 2014, without provocation or probable cause, Holtzclaw stopped and arrested Plaintiff Terri Morris. While Holtzclaw held Plaintiff Morris in his custody, Holtzclaw illegally detained, arrested, searched, used unlawful force, and physically and sexually assaulted against Morris as follows:

a.  On the night of May 8, 2014, Morris was walking home alone. Holtzclaw stopped and arrested Morris. Holtzclaw placed Morris in the back seat of his police car, went back to the driver's seat, and ran Morris's name for warrants.

b.  After a few minutes, Holtzclaw got out of the police car and opened the back door of the police cruiser.  Morris was detained in the back seat of the police cruiser. Holtzclaw ordered Morris to pull down her pants and pull up her shirt.  Morris complied and exposed herself to Holtzclaw as directed.

16

c.   Holtzclaw then exposed his erect penis to Morris, and forced Morris to perform oral sex on him.

d.   Holtzclaw then placed Morris back in the back seat of his police car, and drove Morris to an open field. Petrified and unaware of what was going to happen, Morris hysterically pleaded for Holtzclaw to let her go. After Morris begged for a few minutes, Holtzclaw drove Morris back to the location where he picked her up and let her go.

e.   On or about May 11, 2014, Plaintiff Morris reported Defendant Gregory that Holtzclaw had committed a sexual assault against her on or about May 8, 2014.  Her report included the above cited details. However, despite Morris's documented May 11, 2014, complaint, Defendants covered up Holtzclaw's attack on Morris and did not investigate, check, or review the numerous systems and evidence available to them, including but not limited to, Holtzclaw's GPS, computer access, or contact logs. Further, Defendants did not even question Holtzclaw regarding Morris's complaint that he violated her constitutional rights by unlawfully detaining, arresting, and physically and sexually assaulting her.

36. On or about May 26, 2014, without provocation or probable cause, Holtzclaw stopped and arrested Plaintiff Johnson. While Holtzclaw held Plaintiff Johnson in his custody, Holtzclaw illegally detained, arrested, searched, used unlawful force, and sexually and physically assaulted Johnson as follows:

a.   On the night of May 26, 2014, Johnson was walking alone. Holtzclaw stopped Johnson. Holtzclaw asked Johnson what was she doing and where she was going. Holtzclaw then ordered Johnson to take everything out of her pockets, and asked

17

Johnson if she had possession of anything illegal. Johnson told Holtzclaw that she had no drugs in her possession.  Despite Plaintiff Johnson's statement to Holtzclaw that she did not have possession of any illegal drugs, Holtzclaw got out his car, forced Johnson into the backseat of his police cruiser, and ran her name for outstanding warrants.

b.  After Holtzclaw learned that Johnson did not have any outstanding warrants, Holtzclaw asked her if she had any drugs down her pants.  Johnson told Holtzclaw that she did not possess any illegal drugs. Holtzclaw groped Johnson under her clothes. Johnson told Holtzclaw "sir you're not supposed to be doing that. Please sir." Holtzclaw then released Johnson and Johnson walked away.

37. On or about June 17, 2014, without provocation or probable cause, Holtzclaw stopped and arrested Plaintiff Kale Lyles. While Holtzclaw held Plaintiff Lyles in his custody, Holtzclaw illegally detained, arrested, searched, used unlawful force, and physically and sexually assaulted Lyles as follows:

a.  On the night of June 17, 2014, Lyles was walking alone. Holtzclaw stopped Lyles. Holtzclaw asked Lyles what was she doing and where she was going.  Holtzclaw got out his car, forced Lyles into his backseat, and ran her name for outstanding warrants.

b.  After Holtzclaw learned that Lyles did not have any outstanding warrants, Holtzclaw drove Lyles to an abandoned school, hopping the curb and sliding between two buildings on the school's campus.  Holtzclaw then forced Lyles to expose herself and made vulgar remarks to her.  Holtzclaw forced Lyles to provide oral sex on him

and raped her. Afterwards, Holtzclaw told Lyles he wanted to see her the next day.  He

drove off and Lyles walked home.

38.     On or about June 18, 2014, Holtzclaw sexually assaulted Jannie Ligons.  Ms.

Ligons' cousin is Anthony Carter, an Oklahoma City police officer. Based upon

information and belief, Defendants would have similarly ignored Ligons' complaint and

covered up the fact that Holtzclaw sexually assaulted Ligons had she not had a relative on

the police force.

39.     Had Defendants timely acted upon Campbell's and Morris's complaints,

gathered the abundant information, including Holtzclaw's GPS, contact logs, computer

access, other technologies, and other evidence available to them, questioned Holtzclaw,

and submitted that information to the District Attorney for prosecution of Holtzclaw at the

time of Holtzclaw's  November 5, 2013 assault on Campbell and Holtzclaw's May 8, 2014

sexual assault on Morris, Jannie Ligons, months later and 13 victims later, would not have

had to rely upon her familial relationship with an OKC police officer to finally persuade

Defendants to arrest Holtzclaw and end his reign of terror on African-American women

and the predominately African-American neighborhoods of Northeast Oklahoma City.

Because Ligons' cousin was an OKC police officer, Defendants could no longer ignore,

cover up, and display deliberate indifference to, as well as show a pattern, practice and

custom of ignoring the sexual assaults committed by fellow Oklahoma City police officer

Holtzclaw.

40. Significantly, once Defendants were forced to accept Ligons' complaint, they then

for the first time went back and checked Holtzclaw's readily available GPS, contact logs,

computer access, and other technologies available to them, and questioned Holtzclaw, resulting finally in his arrest and prosecution. In fact, OKCPD Captain Dexter Nelson, who was the head of media affairs for OCPD, stated "checking some of our surveillance systems that we have on our own officers through GPS tracking, checking his [Holtzclaw's] previous traffic stops, they [Investigators] were able to identify some of the victims."[4] Nothing but deliberate indifference stopped Defendants from conducting the same type of investigation described by Captain Nelson after receiving Plaintiff Morris' complaint on or about May 11, 2014.

41. Defendants knowingly did not submit Demetria Campbell's complaint to the District Attorney for prosecution. Submitting Campbell's complaint would have demonstrated the falsity of the narrative that Ligons was the first to complain. Likewise, Defendants knowingly promoted (and still promote) in numerous media outlets this false narrative despite Defendants' knowledge that this narrative is a lie.

**FIRST CAUSE OF ACTION:**
**FOURTH AND FOURTEENTH AMENDMENT SEIZURE/DEPRIVATION**
**OF LIBERTY/ FAILURE TO SUPERVISE/ UNLAWFUL USE OF FORCE**
**As to Defendant OKC**
**42. U.S.C. § 1983**

42. Plaintiff restates and incorporates paragraphs 1 through 41 as if fully set forth herein.

---

[4] See, KOKO Channel article Jury Selected in Trial of former Police Officer Accused of Sexual Assault, http://m.koco.com/news/trial-against-former-oklahoma-city-police-officer-accused-of-sexual-assault-begins-monday/36200534 (last visited Feb. 25, 2016).

43. Title 42 U.S.C. § 1983 provides, in pertinent part: "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party in an action at law…"

44. OKC, acting under color of state law, and according to policies, practices, and customs of OKC, acted in a manner that was deliberately indifferent to the danger posed by Holtzclaw, which led to the deprivation of Plaintiffs' rights secured by the common law, the laws of the State of Oklahoma, and/or the laws and Constitution of the United States of America.

45. Pursuant to the Fourth and Fourteenth Amendment of the United States Constitution, Plaintiffs had due process protections which included the right to bodily integrity and privacy

46. OKC's violation of Plaintiffs' constitutional rights was occasioned by the existence of well-settled polices and/or customs and/or the deliberately indifference to the lack of needed policies and/or customs which included:

    a.  failing to properly test and screen applicants for the position of police officer and/or deliberately and intentionally disregarding evidence that an applicant would abuse his or her police power, if hired;

    b.  failing to properly investigate incidents of police abuse of power, and/or intentionally disregarding evidence showing a police officer had abused his or her police power;

    c.  failing to properly discipline officers who abused their police power;

    d.  failing to properly train police officers not to abuse their police power;

    e.  failing to properly supervise, direct and control officers to ensure they did not abuse their police power;

    f.  failing to properly investigate incidents of racial profiling against African-Americans and/or intentionally disregarding evidence showing that a police officer had targeted and/or racially profiled one or more African-Americans;

    g.  failing to properly train police officers to not racially profile African-Americans;

    h.  failing to properly supervise, direct and control officers to ensure they did not racially profile African-Americans;

    i.  failing to properly supervise, direct and control officers who have a history of abusing their police power against African-Americans;

    j.  failing to promulgate and implement policies and train officers regarding receiving, investigating, and reporting female complaints of sexual assault by OKC officers;

    k.  failing to properly investigate incidents of sexual assault against women, and/or intentionally disregarding evidence showing a police officer had sexually assaulted a woman;

    l.  failing to properly discipline officers who commit sexual assaults against women;

    m. failing to properly train police officers not to commit sexual assaults against women;

n.  failing to properly supervise, direct and control officers to ensure OKC police

officers did not commit sexual assault against women;

o.  failing to require male OKC police officers to submit reports anytime male OKC

officers have contact with  female citizens.

47. Defendant OKC, as a matter of policy, custom and/or practice, has with deliberate

indifference, failed to hire, train, monitor, observe, supervise, investigate, discipline and

retain, and exercise control over its police officers concerning the rights of citizens,

including Plaintiffs.

48. Upon information and belief, the deliberately indifferent acts and omissions of

OKC, in regard to the Plaintiffs' rights and safety, were the result of the decisions,

statements, and/or action of Defendant Citty, who was the policy-making official of OKC

at the specific times relevant to Plaintiffs claims.

49. The acts, omissions, customs, and policies of OKC, as described herein, were the

direct and proximate cause of, and moving force behind, Holtzclaw's illegal stops, arrests,

searches, and physical and sexual assault of Plaintiffs.

## SECOND CAUSE OF ACTION:
## FOURTH AND FOURTEENTH AMENDMENT SEIZURE/DEPRIVATION OF LIBERTY
### As to Defendants Holtzclaw and Citty
### 42. U.S.C. § 1983

50. Plaintiffs incorporate paragraph 1 through 49 herein as if fully set forth.

51. Holtzclaw acted under color of law at the time that he arrested Plaintiffs, as

described above, as well at the time he detained Plaintiffs in his police car and performed

invasive searches of Plaintiffs' persons and touched their bodies, as described above, in

that Holtzclaw was acting as an Oklahoma City Police Officer, in full uniform, operating a marked police car, and was purportedly acting to enforce Oklahoma and Oklahoma City law pursuant to the authority granted to him by OKC. Defendant Citty is responsible for the hiring, training, firing, promoting, and disciplining of OKC officers.

52. Holtzclaw's requiring Plaintiffs to remain in his presence while Holtzclaw conducted unlawful searches of Plaintiffs' persons, without probable cause and during which Plaintiffs reasonably believed they were not free to leave, effected a detention of, and unlawfully seized the persons of Plaintiffs.

53. The actions taken by Holtzclaw as herein described exhibited a deliberate indifference to the constitutionally-protected rights of Plaintiffs on the part of Defendants Holtzclaw and Citty, as said actions were taken under color of law and pursuant to the authority granted to Citty as the OKC Police Chief and to Holtzclaw as an OKC police officer.

54. As a direct and proximate result of the above-described unlawful actions, Plaintiffs suffered a prohibited deprivation of their liberty in that their persons were unlawfully seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

55. Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

### THIRD CAUSE OF ACTION: <br> FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL USE OF FORCE <br> As to Defendants Holtzclaw and Citty <br> 42. U.S.C. § 1983

56. Plaintiff incorporates paragraph 1 through 55 herein as if fully set forth.

57. Holtzclaw acted under color of law at the time the he arrested Plaintiffs, as described above, as well at the time he detained Plaintiffs in his police car and performed invasive searches of Plaintiffs' persons and touched their bodies, as described above, in that Holtzclaw was acting as an OKC Officer, in full uniform, operating a marked police car, and was purportedly acting to enforce Oklahoma and Oklahoma City laws pursuant to the authority granted to him by OKC. Defendant Citty is responsible for the hiring, training, firing, promoting, and disciplining of OKC officers.

58. Holtzclaw's conduct, in effecting his invasive searches of Plaintiffs, constituted an unlawful use of force in that Holtzclaw subjected Plaintiffs to unwanted physical contact which was not objectively reasonable in light of the facts and circumstances confronting Holtzclaw.

59. The actions taken by Holtzclaw as herein described exhibited a deliberate indifference to the constitutionally-protected rights of Plaintiffs on the part of Defendants Holtzclaw and Citty, as said actions were taken under color of law and pursuant to the authority granted to Citty as the OKC Police Chief and to Holtzclaw as an OKC police officer.

60. As a direct and proximate result of the above-described unlawful actions, Plaintiffs suffered a prohibited deprivation of their rights to be free from unlawful searches under the Fourth Amendment to the United States Constitution.

61. Consequently, Plaintiff is entitled to damages and other relief as set forth herein.

**FOURTH CAUSE OF ACTION:**
**CONSPIRACY TO INTERFERE WITH FOURTH AND FOURTEENTH**
**AMENDMENT RIGHTS**
**As to All Defendants**
**42 U.S.C. § 1985(3)**

**"If two or more persons in any State or Territory conspire… for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;…the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."**

62. Plaintiffs restate and incorporate paragraphs 1 through 61, as if set forth fully herein.

63. Title 42 U.S.C. § 1985(3) prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

64. The conspiracy occurred among Defendants Citty, Bennett, Gregory, and John and Jane Doe between November 5, 2013 and June 18, 2014.

65. The conspiracy involved them meeting, discussing, agreeing, and conspiring to cover up the fact that on November 5, 2013, Demetria Campbell complained to Bennett that she had been illegally detained, arrested, victimized by unlawful force, and sexually assaulted by Holtzclaw, and that Defendants Citty, Bennett, Gregory, and John and Jane Does had knowingly failed and apparently refused to take any action as a result of Campbell's complaint, other than Bennett apologizing for Holtzclaw's behavior.

66. The conspiracy involved Defendants Citty, Bennett, Gregory, and John and Jane Does meeting, discussing, agreeing, and conspiring to fail and apparently refusing to conduct a timely investigation of the fact that on or about May 11, 2014, Plaintiff Morris

26

complained that she had been illegally detained, arrested, victimized, and sexually assaulted by Holtzclaw, and that Defendants Citty, Bennett, Gregory, and John and Jane Does knowingly failed and apparently refused to take any action as a result of Morris' complaint, other than Gregory giving her his card after she had reported to him that she had been raped by Holtzclaw.

67. It was only after Jannie Ligons complained of being illegally detained, arrested, victimized, and sexually assaulted by Holtzclaw, on June 18, 2014, that Defendants were forced to take Holtzclaw off the street and conduct the full-fledged investigation they should have conducted after Campbell and Morris had complained.

68. This conspiracy was motivated by an invidious discriminatory animus against African-Americans in general, and African-American females in particular, who were painted with the stereotypical brush of bias and prejudice that their constitutionally protected right to bodily integrity does not matter and need not be recognized, investigated, protected, or prosecuted, particularly when the victimizer is a white member of the OKC police department.

69. The discriminatory animus against African-Americans in general, and these African-American females in particular, was demonstrated by Defendants' deliberate failure to conduct an investigation into Demetria Campbell and Plaintiff Morris' complaints, and Defendants apparent refusal to take Holtzclaw off the street pending an investigation. An investigation that Defendants knowingly and with deliberate indifference, failed to initiate until after they were forced to do so, because Holtzclaw's

last victim, Jannie Ligons, had a familial relationship with Oklahoma City police officer, Anthony Carter.

70. Prior to Holtzclaw's criminal prosecution, there was a meeting of the minds, a conspiracy, and agreement among Defendants Citty, Bennett, Gregory, and John and Jane Does to cover up rather than report and present to the District Attorney that before any of the 13 African-American females that Holtzclaw was ultimately prosecuted for sexually assaulting, that Demetria Campbell was Holtzclaw's first African-American female victim. Holtzclaw should have been prosecuted for sexually assaulting 14 African-American females, not 13. The reason Defendants covered up Demetria Campbell as Holtzclaw's first African-American female victim is because Defendants were fully aware that such disclosure would eviscerate Defendants' wildly distributed (but false) media reports that Defendants take such allegations very seriously. Clearly, Defendant did not take Campbell's complaint seriously, because had they done so, none of Holtzclaw's subsequent 13 victims would have been sexually assaulted.

**FIFTH CAUSE OF ACTION:**
**FOURTH AND FOURTEENTH AMENDMENT FAILURE TO SUPERVISE**
**As to all Defendants**
**42. U.S.C. § 1983**

71. Plaintiff incorporates paragraph 1 through 70 herein as if fully set forth.

72. Defendants knew that Holtzclaw had, prior to unlawfully stopping, arresting, searching, and physically and sexually assaulting Plaintiffs Barnes, Bowen and Morris, committed at least two acts of unlawful force as described above and at least one act of

unlawfully stopping, arresting, seizing, and physically and sexually assaulting an African-American female, as described above.

73. Defendants knew that Holtzclaw had, prior to unlawfully stopping, arresting, searching, and physically and sexually assaulting Plaintiffs Johnson and Lyles, committed at least three (3) instances of unlawful stops, searches, unlawful force, and sexual assault as described above.

74. Alternatively, Defendants should have known of the multiple unconstitutional stops, searches, seizures, and physical and sexual assaults Holtzclaw committed as described above by simply utilizing the multitude of monitoring tools at Defendant' disposal. Had they utilized such resources, Defendants would have been aware of Holtzclaw's unlawful on-duty whereabouts and activities. These resources included, but were not limited to Holtzclaw's readily available GPS, contact logs, warrant and name database searches, and radio call-in records.

75. Holtzclaw's GPS, contact logs, warrant database searches, and radio call-in records were readily available to be reviewed by Holtzclaw's supervisors. It was the review of these records by Detective Kim Davis and other OKC officers that helped lead to the eventual arrest and prosecution of Defendant Holtzclaw.

76. Despite prior reports that Holtzclaw committed unlawful acts of violence against African-Americans, Defendants, as Holtzclaw's supervisors, deliberately allowed Defendant Holtzclaw to patrol the predominately African-American neighborhoods of Northeast Oklahoma City, alone, without supervision, during the sparsely populated overnight hours and failed to supervise and monitor his activities.

77. By deliberately ignoring Holtzclaw's prior unconstitutional behavior, Defendants set into motion a series of events that they knew or should have known would cause Holtzclaw to deprive Plaintiffs of their constitutional rights.

78. The failure on the part of Defendants to supervise Holtzclaw demonstrated that they were deliberately indifferent to the rights of Plaintiffs.

79. As a direct and proximate result of the above-described unlawful actions, Plaintiffs suffered a prohibited deprivation of their liberty in that their persons were unlawfully seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

80. Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

## SIXTH CAUSE OF ACTION
## FOURTH AND FOURTEENTH AMENEDEMENT MUNICIPAL LIABILITY-RATIFICATION
### As to All Defendants
### 42. U.S.C. § 1983

81. Plaintiff incorporates paragraphs 1 through 80 herein as if fully set forth herein.

82. Defendants deprived Plaintiffs of their Fourth and Fourteenth Amendment rights under the United States Constitution.

83. Defendant Citty was the final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants, ratified such acts and the bases for them. Defendants Citty, the final policymaker, knew of and specifically approved of the acts of Defendants.

84. Defendant Citty the final policymaker has determined that the acts of Defendants were "within policy."

85. By reason of the aforementioned acts and omissions, Plaintiffs have suffered devastating and substantial mental, emotional, physical, and financial damages.

86. Accordingly, Defendants each are liable to Plaintiffs for damages and other relief as set forth herein.

**SEVENTH CAUSE OF ACTION**
**FOURTH AND FOURTEENTH AMENDMENTS**
**MUNICIPAL LIABILITY—FAILURE TO TRAIN**
**As to All Defendants**
**42. U.S.C. § 1983**

87. Plaintiff incorporates paragraphs 1 through 87 herein as if fully set forth herein.

88. Defendants deprived Plaintiffs of their Fourth and Fourteenth Amendment rights under the United States Constitution.

89. The training policies of OKC were non-existent and/or inadequate to train its police officers to handle the usual and recurring situations with which they must effectively navigate.  Specifically, training was totally inadequate, without limitation, with respect to:

    a.  receiving complaints of sexual assault by fellow OKC police officers;

    b.  investigating complaints of sexual assaults by fellow OKC police officers;

    c.  disciplining OKC police officers for sexual assaults upon OKC residents;

    d.  prosecuting OKC police officers for sexual assaults upon OKC residents.

90. Defendant OKC was deliberately indifferent to the obvious consequences of its failure to train  its police officers adequately.

91. The failure of Defendant OKC to  promulgate, implement, and/or adequately train, supervise, and discipline its officers caused the deprivation of the Plaintiffs rights; that is,

Defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

92. By reason of the aforementioned acts and omissions, Plaintiffs have suffered devastating and substantial mental, emotional, physical, and financial damages.

93. Accordingly, Defendants each are liable to Plaintiffs for damages and other relief as set forth herein.

**EIGHT CAUSE OF ACTION:**
**UNLAWFUL SEARCH AND SEIZURE**
**As to all Defendants**
**Okla. Const. art. II, § 30**

94. Plaintiffs incorporate paragraph 1 through 93 herein as if fully set forth.

95. At the time of Holtzclaw's unlawful stops, arrests, searches of Plaintiffs, Defendant OKC employed Holtzclaw in the capacity of Police Officer, granting Holtzclaw the authority to act under the color of law in the name of the City of Oklahoma City to enforce statutes and laws of the City of Oklahoma City and the State of Oklahoma.

96. Further, at the time of the Holtzclaw was committing his unlawful stops, arrests, and searches against Plaintiffs, Defendant Holtzclaw was acting within the scope of his employment as an employee and agent for Defendant OKC.

97. Pursuant to that authority, Defendant Holtzclaw unlawfully detained Plaintiffs, against their will, by impermissibly ordering Plaintiffs to enter his police car while Holtzclaw effected unlawful and invasive searches, of Plaintiffs' persons, without probable cause or a warrant authorizing either the seizure or search of Plaintiffs' persons.

98. Pursuant to the authority granted by Defendant OKC, Defendant Holtzclaw restrained Plaintiffs, without due and legal process, with Plaintiffs' full knowledge that they were being restrained.

99. As a direct and proximate result of the above-described unlawful actions of Defendants, Plaintiffs suffered a prohibited deprivation of their rights to be free from unlawful search and seizures under Okla. Const. art. II, § 30, and suffered damages for which Defendants are liable.

100. Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

## NINTH CAUSE OF ACTION: ASSAULT AND BATTERY
### As to Defendant OKC
### Oklahoma Governmental Torts Claims Act
### 51 O.S. § 151

101. Plaintiff Bowen incorporates paragraph 1 through 100 herein as if fully set forth.

102. Plaintiff Bowen timely complied with all requirements and obligations pursuant to the Oklahoma Governmental Torts Claims Act before the filing of this lawsuit.

103. At the time of Plaintiff Bowen's unlawful stop, arrest, and search, Defendant OKC employed Holtzclaw in the capacity of Police Officer, granting Holtzclaw the authority to act under the color of law in the name of the City of Oklahoma City, Oklahoma to enforce statutes and laws of the City of Oklahoma City and the State of Oklahoma.

104. Further, at the time of the Holtzclaw was committing his unlawful stops, arrests, and searches against Plaintiff Bowen, Defendant Holtzclaw was acting within the scope of his employment as an employee and agent for Defendant OKC.

105. Defendant Holtzclaw placed Plaintiff Bowen in apprehension of an immediate offensive contact with Plaintiff Bowen's person in the course of effecting the unlawful search of Plaintiff Bowen's person.

106. Defendant Holtzclaw then acted with the intent of making an offensive contact with the person of Plaintiff Bowen and made said offensive contact by groping and fondling Plaintiff Bowen's expose naked breasts.

107. Defendant Holtzclaw made said offensive contact with Plaintiff Bowen without Plaintiff Bowen's consent.

108. As a direct and proximate cause of the offensive contact of Plaintiff Bowen's person, by and through OKC's duly authorized agent, Defendant Holtzclaw, Plaintiff Bowen suffered injury caused by Defendant OKC.

109. Consequently, Plaintiff Bowen is entitled to damages and other relief as set forth herein.

**TENTH CAUSE OF ACTION: NEGLIGENT SUPERVISON**
**As to Defendants OKC**
**Oklahoma Governmental Torts Claims Act**
**51 O.S. § 151**

110. Plaintiff Bowen incorporates paragraph 1 through 109 herein as if fully set forth.

111. Plaintiff Bowen timely complied with all of her requirements and obligations pursuant to the Oklahoma Governmental Torts Claims Act before the filing of this lawsuit.

112. At the time of Plaintiff Bowen's unlawful stop, arrest, and search, Defendant OKC employed Holtzclaw in the capacity of Police Officer, granting Holtzclaw the authority to

act under the color of law in the name of the City of Oklahoma City to enforce statutes and laws of the City of Oklahoma City and the State of Oklahoma.

113. At the time of the Holtzclaw was committing his unlawful stops, arrests, and searches against Plaintiff Bowen, Defendant Holtzclaw was acting within the scope of his employment as an employee and agent for Defendant OKC.

114. At the time of Plaintiff Bowen's unlawful stop, arrest, search, and sexual assault, Defendant OKC already knew that Holtzclaw had killed an African-American male, Clifton Armstrong, and unlawfully stopped, arrested, and physically and sexually attacked an African-American female, Demetria Campbell.

115. Further, at the time of Plaintiff Bowen's unlawful stop, arrest, search, and sexual and physical assault, Defendant OKC had several tools readily available to supervise, track, and monitor Holtzclaw's on-duty behavior and whereabouts, including but not limited to, Holtzclaw's in-car GPS, contact and warrant check logs and databases, and radio call-ins reports and records.

116. Defendant OKC, through the exercise of ordinary care, knew or should have known of Defendant Holtzclaw's propensity for committing unlawful acts against African-Americans like Plaintiff Bowen.

117. Nonetheless, Defendant OCKPD negligently disregarded the obvious risks, and allowed Defendant Holtzclaw to operate a OKC patrol car and roam the predominately African-American neighborhoods of Northeast Oklahoma City during the overnight hours when witnesses were sparse, under the actual and apparent authority of the OKC Police Department where he had free reign to unlawfully stalk, stop, arrest, search, and physically

35

and sexually at least an additional thirteen (13) poor African-American women, including Plaintiff Bowen.

118.  As a direct and proximate cause of the actions of Defendant OKC, Plaintiff Bowen suffered offensive contact with her person, by and through OKC's duly authorized agent, Defendant Holtzclaw, and Plaintiff Bowen suffered injury.

119.  Consequently, Plaintiff Bowen is entitled to damages and other relief as set forth herein.

### ELEVENTH CAUSE OF ACTION: FALSE ARREST/IMPRISONMENT
### As to Defendant OKC
### Oklahoma Governmental Torts Claims Act
### 51 O.S. § 151

120.  Plaintiff Bowen incorporates paragraph 1 through 119 herein as if fully set forth.

121.  At the time of Plaintiff Bowen's unlawful stop, arrest, and search, Defendant OKC employed Holtzclaw in the capacity of Police Officer, granting Holtzclaw the authority to act under the color of law in the name of the City of Oklahoma City, Oklahoma to enforce statutes and laws of the City of Oklahoma City and the State of Oklahoma.

122. at the time of the Holtzclaw was committing his unlawful stops, arrests, and searches against Plaintiff Bowen, Defendant Holtzclaw was acting within the scope of his employment as an employee and agent for Defendant OKC.

123. Pursuant to that authority, Defendant Holtzclaw unlawfully detained Plaintiff Bowen, against her will, by impermissibly ordering Plaintiff Bowen to enter the backseat of his police car and impermissible detaining her there while he unlawfully and invasively

36

searched her person without probable cause or a warrant authorizing either the seizure or search of Plaintiff Bowen's person.

124. Pursuant to the authority granted by Defendant OKC, Defendant Holtzclaw unlawfully restrained Plaintiff Bowen, without due and legal process, with Plaintiff Bowen's full knowledge that she was being restrained, pursuant to Defendant Holtzclaw's unlawful detention and search of Plaintiff Bowen's person.

125. As a direct and proximate cause of Defendant OKC's actions, Plaintiff Bowen suffered offensive contact of her person, by and through OKC's duly authorized agent, Defendant Holtzclaw, and Plaintiff Bowen suffered injury.

126. Consequently, Plaintiff Bowen is entitled to damages and other relief as set forth herein.

## **PRAYER FOR RELIEF**

Plaintiffs pray this Court will grant the following:

l.   All actual damages suffered by Plaintiffs, including those emanating from physical pain, mental anguish and emotional distress in excess of seventy five thousand dollars ($75,000.00).

2.   Damages for violations of Plaintiffs' constitutional rights.

3.   Punitive damages to the extent permitted by law.

4.   A declaration that that the detention and search of Plaintiffs' persons, as described herein, were unconstitutional as a matter of law.

5.   Injunctive relief requiring Defendant OKC to promulgate and implement policies and procedures to prevent such deprivations of constitutional rights in the future, and

requiring Defendant OKC to train OKC officers regarding receiving, investigating, and reporting sexual assaults against women by OKC officers and employees.

6.   Injunctive relief requiring Defendant OKC to create an investigative unit to specifically receive, investigate, report allegations of sexual abuse by OKC officers and employees directly to the District Attorney, and make reports public within 90 days.

7.   Injunctive relief requiring Defendant OKC to equipment all of its officers with body cameras that are unable to be tampered with or shut off by the officer wearing said camera.

8.   An award of attorneys' fees pursuant to 42 U.S.C. § 1988(b) and any other applicable provision of law.

9.   Any and all further relief this Court deems just and equitable.

Respectfully submitted,

**PARKS & CRUMP, LLC**

**RIGGS, ABNEY, NEAL TURPEN,
 ORBISON & LEWIS, PC**

Benjamin L. Crump, FL Bar No. 72583
240 North Magnolia Drive
Tallahassee, Florida 32301
(850) 222-3333— Office
(850) 224-6679 — Fax
bcrump@parkscrump.com

s/ Melvin C. Hall
Melvin C. Hall, OBA #3728
528 NW 12th Street
Oklahoma City, OK 73103
(405) 843-9909—Office
(405) 842-2913—Fax
mhall@riggsabney.com

-and-

Damario Solomon-Simmons, OBA #20340
502 West 6th Street
Tulsa, Oklahoma 74119
(918) 587-3161—Office
(918) 587-9708—Fax
dsimmons@riggsabney.com

*ATTORNEYS FOR PLAINTIFFS*

**Attorney's Liens Claimed
Jury Trial Demanded**