Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JANNIE LIGONS, SHANDAYREON HILL,)
TABATHA BARNES, TERRI MORRIS,   )
SYRITA BOWEN, CARLA JOHNSON,    )
KALA LYLES,                     )
                                )
          Plaintiffs,           )
                                )
-vs-                            )  CASE NO. CIV-16-184-HE
                                )
CITY OF OKLAHOMA CITY, a        )
municipal corporation,          )
DANIEL HOLTZCLAW, BILL CITTY,   )
BRIAN BENNETT, ROCKY GREGORY,   )
JOHN AND JANE DOES, all in      )
their individual capacity,      )
                                )
          Defendants.           )


VIDEOTAPED DEPOSITION OF

TIMOTHY ALAN MUZNY

TAKEN ON BEHALF OF THE PLAINTIFFS

IN OKLAHOMA CITY, OKLAHOMA

ON MARCH 26, 2019


REPORTED BY:  TRENA K. BLOYE, CSR

Timothy Muzny                                          March 26, 2019

Page 89

1  paragraph.  And when you finish let me know.  I want to
2  ask you a question about it.
3       A    Okay.
4       Q    Would you agree that this policy 332.20 states
5  that, "Investigators shall diligently attempt to
6  interview victims, witnesses and suspects to confirm
7  facts of the case and to obtain information not
8  contained in an initial report"?
9       A    That's what it says, yes.
10      Q    Okay.  Thank you.
11      A    Can I add something since you brought that up?
12 The last part of it is, "To make a determination as to
13 whether the victim wishes to prosecute should a suspect
14 be identified and/or apprehended."
15      Q    Okay.
16      A    Once we went out and got -- found Terri Morris
17 she originally signed a Failure to Prosecute form.
18      Q    Okay.  And what's the significance of that to
19 you?
20      A    That means she doesn't want to prosecute.
21      Q    Is that unusual for sexual assault victims to
22 say "I don't want to go through this and relive this
23 incident"?
24      A    Unusual, I don't know.  On something that's --
25 let's just call it higher profile because it's an

1  officer involved, I'd say it's, yeah, they would be a
2  little -- they'd be a little more -- it's kind of
3  probably a little bit harder to understand why.
4      Q   Understand why what?
5      A   Why she would not want to prosecute when it's a
6  police officer.  Because on our end, the worst thing for
7  any of us as an investigator is to have a police officer
8  that's a suspect in it.  I mean, you just can't have it.
9  You can't have police officers sexual assaulting people.
10 And we've got to be able to have -- we've got to have
11 the cooperation from the victim in order to prosecute
12 that person.  So I'm not saying, you know, we didn't
13 give up on her or anything like that.
14     Q   So you consider an allegation of sexual assault
15 by a police officer to be an extraordinary event;
16 correct?
17     A   It's a lot more important than somebody saying,
18 Well, they threw me down on the ground too hard.
19     Q   Well, do you consider a sexual assault, a
20 report against a police officer to be something of an
21 extraordinary nature?
22     A   I'm saying we can't have it.
23     Q   Well, what do you mean by, "We can't have it"?
24 Is it a priority?
25     A   Yes.

Page 127

1    prior to June 18, 2014; correct?

2        A    No.

3        Q    But you guys knew that Holtzclaw was a suspect

4    in Terri Morris's sexual assault; correct?

5        A    No.

6        Q    Why didn't you know that?

7              MR. SMITH:  Object to the form.

8        A    The description she gave fits all kinds of

9    people on the police department, and the location she

10   gave was nowhere near where his AVL was.  You've got to

11   start out with the truth.

12       Q    (By Mr. Solomon-Simmons) Okay.

13       A    We had -- we had nothing to go off of but a

14   six-foot-tall muscular white guy with dark hair,

15   approximately 40 years old.

16       Q    That's not exactly correct, sir.  You also had

17   the fact that Mr. Holtzclaw had contact with Ms. Morris

18   in May of 2014; correct?

19             MR. SMITH:  Object to the form.

20       A    If the records show that he -- yeah, he would

21   have had -- yeah.  He would have had contact with her.

22       Q    (By Mr. Solomon-Simmons) Yeah.  And he was the

23   only officer who had documented contact with Ms. Morris

24   in May of 2014; correct?

25             MR. SMITH:  Object to form.

```
 1     A    Documented?
 2     Q    (By Mr. Solomon-Simmons)  Yes.
 3     A    From what I'm able to tell through
 4   documentation, yes.
 5     Q    Yes.  And he -- that's the only officer who was
 6   documented to have contact with Ms. Morris, he fit the
 7   description she gave of the officer who sexually
 8   assaulted her; correct?
 9          MR. SMITH:  Object to the form.
10     A    Very loosely.
11     Q    (By Mr. Solomon-Simmons)  Okay.  I think you
12   earlier testified that Mr. Holtzclaw is about six feet;
13   correct?
14     A    Six feet, dark hair, little bit darker skin,
15   nowhere near 40.
16     Q    Yeah, but -- okay.  Did she say he was around
17   six feet?
18     A    I believe so.
19     Q    Did she say he was darker skin?
20     A    If that's what the report says, yes.
21     Q    Did she say he had black hair?
22     A    I think so.
23     Q    Did she say he was muscular build?
24     A    Yes.
25     Q    Did she say he was clean shaven?
```

```
 1      A    You have to be clean shaven if you're in
 2   patrol.
 3      Q    Okay.  So is it your testimony that that is
 4   nowhere close to being a description of Mr. Holtzclaw?
 5           MR. SMITH:  Object to form.
 6      A    It's close.  But like I said earlier, it fits a
 7   description of a whole lot of police officers.
 8      Q    (By Mr. Solomon-Simmons) Right.  But did any
 9   other officer have contact with Ms. Morris --
10           MR. SMITH:  Object to form.
11      Q    (By Mr. Solomon-Simmons) -- in May of 2014.
12           MR. SMITH:  Asked and answered about five
13   times.
14      Q    (By Mr. Solomon-Simmons) You can answer, sir.
15      A    I don't know if anybody else had contact with
16   her or not --
17      Q    Okay.
18      A    Documented, one.
19      Q    So would you say that Mr. Holtzclaw was an
20   involved -- potentially involved party?
21      A    Yes.
22      Q    Okay.  What's the difference between a
23   potentially involved party and a suspect?
24      A    Definition?
25      Q    As a sex crimes detective -- as a sex crimes
```

Page 148

1   with someone which was not able to provide all the
2   facts, you were still able to move forward in the
3   investigation; correct?
4        A   Yes, you could do some form of an
5   investigation.
6        Q   What if -- what if in that scenario an
7   individual did not know who raped them, but they can
8   say, Well, this is the last two people I remember being
9   in the presence of?  Would those people be considered
10  being involved parties?
11       A   Possibly.
12       Q   And would it be prudent for the investigator to
13  speak to those two individuals?
14       A   If the victim wanted to go through with their
15  case, yes, or they case, not her case.
16       Q   Okay.  Is it your testimony that Oklahoma City
17  Police Department only investigates crimes when the
18  victim says, Hey, I want you to do this?
19       A   No.
20       Q   Okay.  So you say only if the victim want to
21  move forward would you talk to the potentially involved
22  parties.  Can you explain that?
23       A   If the victim doesn't want to prosecute
24  specifically a sexual assault case, you've got some
25  privacy issues with sexual assault.  I'm not going to go

1   around and talk about the victim's case with other
2   people if they don't want to go forward with the
3   investigation.
4       Q   Okay.
5       A   But you said earlier that if the victim doesn't
6   want to prosecute, we don't investigate.  That's not
7   true.  It's not true specifically in relation to
8   domestic violence case, because you do not have to have
9   a victim that's willing to prosecute on a DV case.
10      Q   And you don't always have to have a victim to
11  prosecute on a rape case; correct?
12      A   No.  You have to have a victim.  If they don't
13  want to prosecute, you're done.
14      Q   Now, earlier we were talking about the proper
15  ways you interview or to talk with a sexual assault
16  victim.  Do you recall that conversation?
17      A   Yes.
18      Q   And I think you agreed that you should provide
19  the victim with some privacy in an initial interview;
20  correct?
21      A   If you can, yes.
22      Q   And you would agree that interviewing a vehicle
23  in the middle of a gas station parking lot with several
24  other people around is not full privacy.  Would you
25  agree?