IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) TABATHA BARNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-16-184-HE |
| | ) | |
| (1) CITY OF OKLAHOMA CITY, | ) | |
| a municipal corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANT BENNETT'S RESPONSE AND OBJECTION TO
PLAINTIFFS'MOTION TO ALTER OR AMEND
JUDGMENT IN FAVOR OF DEFENDANT BRIAN BENNETT**
_____

Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN, & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105-1815
Telephone:   (405) 524-2070
Facsimile:   (405) 524-2078
E-mail: acg@czwlaw.com

ATTORNEY FOR DEFENDANT
BRIAN BENNETT

June 17, 2019

## <u>TABLE OF CONTENTS</u>

<b><u>PAGE</u></b>

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii - iv

LIST OF EXHIBITS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

I.   FEDERAL RULE OF CIVIL PROCEDURE 59 STANDARD  . . . . . . . . . . . . . 1

II.  PLAINTIFFS HAVE FAILED TO DEMONSTRATE
     SUFFICIENT GROUNDS FOR RECONSIDERATION
     OF THIS COURT'S ORDER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. THE COURT DID NOT INVADE THE PROVINCE
     OF THE JURY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.  BENNETT IS ENTITLED TO QUALIFIED IMMUNITY  . . . . . . . . . . . . . . . . 13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITY

**PAGE**

## CASES

*Adkins v. Rodriguez*, 59 F.3d 1034 (10th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Aldaba v. Pickens*, 844 F.3d 870 (10th Cir. 2016)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)  . . . . . . . . . . . . . . . . . . . . . . . . 4

*Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990)  . . . . . . . . . . . 10

*Board of County Commissioners of Bryan County, Oklahoma v. Brown*,
520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brousseau v. Haugen*, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)  . . . . . . . . . . . . . . . . . 15

*City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)  . . . . 10

*Elder v. Holloway*, 510 U.S. 510 (1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Estate of B.I.C. v. Gillen*, 761 F.3d 1099 (10th Cir. 2014)  . . . . . . . . . . . . . . . . . . . . 15, 16

*Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014)  . . . . . . . . . . . . . . . . . . . . . . 4

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)  . . . . . . 9, 10

*Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct 532, 116 .Ed. 2d 589 (1991)  . . . . . . . . . . . . 14

*Jenkins v. Wood*, 81 F.3d 988 (10th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Klein v. City of Loveland*, 661 F.3d 498 (10th Cir. 2011)  . . . . . . . . . . . . . . . . . . . . . . . 16

*LaFleur v. Teen Help*, 342 F.3d 1145 (10th Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . 1

*McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979)  . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mick v. Brewer*, 76 F.3d 1127 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) . . . . . . . 14

*Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 14

*Novitsky v. City of Aurora*, 491 F.3d 1244 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 3

*Orange v. Burge*, No. 04 C 0168, 2008 WL 4425427, at *5
(N.D. Ill. Sept. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Patterson v. Burge*, No. 03 C 4433, 2010 WL 3894433, at *3
(N.D. Ill. Sept. 27, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) . . . . . . . . 15

*Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) . . . . . . . . . . . . . . 3

*Sample v. Diecks*, 885 F.2d 1099 (3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) . . . . . . . 14, 15

*Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013) . . . . . 4

*Searles v. Dechant*, 393 F.3d 1126 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 5

*Servants of Paraclete v. Doe*, 204 F.3d 1005 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 2

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*White v. Pauly*, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) . . . . . . . . . . . 10

## STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 14

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## RULES

Rule 59 of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 59(e) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## <u>LIST OF EXHIBITS</u>

Exhibit 1     Excerpts of the Deposition of Brian Jennings taken on April 23, 2019

Exhibit 2     Excerpts of the Deposition of Ron Bacy taken on March 27, 2019

Exhibit 3     Excerpts of the Deposition of Denise Wenzel taken on April 29, 2019

Exhibit 4     Excerpts of the Deposition of Terri Morris taken on December 13, 2018

Exhibit 5     Higginbottom Photo Lineup Form

Exhibit 6     Interview of Holtzclaw

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) TABATHA BARNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-16-184-HE |
| | ) | |
| (1) CITY OF OKLAHOMA CITY, | ) | |
| a municipal corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BENNETT'S RESPONSE AND OBJECTION TO
PLAINTIFFS'MOTION TO ALTER OR AMEND
JUDGMENT IN FAVOR OF DEFENDANT BRIAN BENNETT**

Defendant Brian Bennett submits this Response to "Plaintiffs' Motion to Alter or Amend Judgment in Favor of Defendant Brian Bennett" [Dkt. 197]. For the following reasons, the Plaintiffs' Motion should be denied.

## I.      FEDERAL RULE OF CIVIL PROCEDURE 59 STANDARD.

Although styled as a "Motion to Alter or Amend Judgment," Plaintiffs' Motion is actually a motion for reconsideration, as Plaintiffs are requesting the Court to reconsider its grant of summary judgment to Defendant Bennett. Motions for reconsideration are not among the motions recognized by the Federal Rules of Civil Procedure.  Indeed, "[s]uch relief is extraordinary and may only be granted in exceptional circumstances." *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (quoting *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003)). Grounds warranting a motion for reconsideration include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."

*Servants of Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). Furthermore, a motion for reconsideration under 59(e) "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citation omitted).

Here, Plaintiffs ostensibly rely upon newly discovered evidence in support of their Motion. However, Plaintiffs really only rely upon this alleged newly discovered evidence simply to revisit issues already addressed and advance arguments that could have been raised in prior briefing. More importantly, even granting consideration of this alleged newly discovered evidence, Plaintiffs have failed to demonstrate sufficient grounds which warrant reconsideration of this Court's Order granting summary judgment to Defendant Bennett. In sum, Plaintiffs have certainly failed to demonstrate the sort of exceptional circumstances necessary to warrant such extraordinary relief.

## II.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE SUFFICIENT GROUNDS FOR RECONSIDERATION OF THIS COURT'S ORDER.

Plaintiffs assert that "[n]ew evidence proves Bennett was exclusively responsible for investigating [the Campbell] incident and reporting all the facts up his chain of command." (Dkt. 197, p. 9). However, Plaintiffs do not cite to any *new* evidence in support of that contention, but rather only rely on evidence already in the record. (*Id.*) Moreover, even if Plaintiffs had any new evidence to support this assertion, that Defendant Bennett had supervisory authority over Holtzclaw with regard to the Campbell incident is simply not new information, but rather merely additional evidence in support

of a position that Plaintiffs made in their summary judgment briefing and which was not even contested by Defendant Bennett. *See* Dkt. 159, pp. 12, 25-26, 28; Dkt. 165, p. 4).

Plaintiffs cite to new deposition testimony of Defendant Gregory indicating that Defendant Bennett volunteered to take the Campbell call. (Dkt. 197, p. 9). However, while Defendant Bennett disputes this contention, it make absolutely no difference to the relevant legal analysis whether Defendant Bennett voluntary accepted supervisory authority with regard to the Campbell incident or whether he had such authority thrust upon him.

Supervisory "status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (citing *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S. Ct. 598, 606-07, 46 L. Ed. 2d 561 (1976)). It is insufficient for Plaintiffs to merely show that the Defendant Bennett had supervisory authority over Holtzclaw with regard to the Campbell investigation. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Additionally, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3rd Cir. 1989). Rather, in order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of constitutional rights must be established. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (police officer who was present at scene but who did not assist or direct other officer in removing arrestee from vehicle did not violate Fourth Amendment; he did not "personally participate" in the use of the twist-lock restraint).

3

Accordingly, Plaintiffs must demonstrate "a deliberate, intentional act by [Defendant Bennett] to violate constitutional rights." *Jenkins,* 81 F.3d at 994-95.

In order to prevail on such a claim, Plaintiffs must present evidence of an affirmative link between the alleged constitutional violation and Defendant Bennett's actions. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014).

> This requires "more than a supervisor's mere knowledge of his [or her] subordinate's conduct"…Rather a plaintiff must satisfy "three elements…to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind."

*Id*. (quoting *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, (10th Cir. 2013)). In the wake of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), which "articulated a stricter liability standard for…personal involvement," *Schneider*, 717 F.3d at 768, the exact contours of the first element of supervisory liability remain somewhat unclear. *Estate of Booker*, *supra*. However, "direct participation" is not necessary to satisfy this element. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

"The second elements 'requires the plaintiff to show that the defendant's alleged actions(s) caused the constitutional violation' by setting 'in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff or her constitutional rights.'" *Estate of Booker*, *supra*. (quoting *Schneider*, 717 F.3d at 768). "The third element 'requires the plaintiff to show that the defendant took the alleged actions with the requisite state of mind…" *Id*. (quoting *Schneider*, 717 F.3d at 769). In this case, the requisite state of mind to impose liability against Defendant

4

Bennett in his supervisory capacity is deliberate indifference. *See Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006).

In its Order granting Bennett's Motion for Summary Judgment, this Court found that Plaintiffs had failed to present sufficient personal participation in alleged violation of their constitutional rights by Holtzclaw to warrant the imposition of supervisory liability. In that regard, the Court noted that it was undisputed that Bennett was not Holtzclaw's regular or line supervisor, that there no evidence that he was Holtzclaw's training officer or that he had any responsibility for training him, and that it was undisputed that Lt. Bennett had very little day-to-day contact with Holtzclaw. (Dkt. 190, p. 5). The Court further noted that it was undisputed that Bennett had no role in the assaults, no role in the eventual investigations of them, and no role in the investigation of Officer Holtzclaw. (Dkt. 190, p. 6). From these facts the Court concluded that Defendant "Bennett was not Holtzclaw's supervisor in any sense relevant to this legal standard" and that he was not Holtzclaw's supervisor such as might be the basis for failure to train or supervise…" (Dkt. 190, p. 5). The Court further concluded that "[t]here is no evidence that Bennett had any 'culpable involvement in the violation of' plaintiffs' rights." (Dkt. 190, p. 6). Nothing in the Plaintiffs' Motion contravenes the Court's determination in this regard.

In addressing Plaintiffs' 42 U.S.C. §1985 claims, the Courte noted the "extraordinarily tenuous nature of plaintiffs' argument as to the 'causation' element…" (Dkt. 190, p. 7). The Court concluded that the "Plaintiffs have not offered evidence from which a jury could plausibly conclude, on a non-speculative basis," that Defendant Bennett's actions "<u>resulted in</u> Holtzclaw's later actions and plaintiffs' later injuries."

(Dkt. 190, p. 8, emphasis in original). In their Motion, Plaintiffs states that "[n]ewly discovered evidence also suggests that had Bennett properly treated Campbell's allegations as an actual citizen complaint, rather than a use of force, the crimes committed against these Plaintiffs would have been prevented." (Dkt. 197, p. 12). In summary, Plaintiffs argue:

> A reasonable jury could find that Bennett's failure to adequately investigate and document Campbell's allegations or to treat them as a citizen complaint caused Holtzclaw to become emboldened and to escalate to perpetrating sexual assault against these Plaintiffs and also prevented the OCPD from apprehending Holtzclaw before he had a chance to do sexually assault these Plaintiffs. But for Bennett's failures in these respects, Chief Citty would have learned of Campbell's allegations much earlier and would have terminated Holtzclaw because Chief Citty believed that an officer's prior actions would predict how the officer would act in the future. Had that been the case, OCPD could have prevented all the trauma Plaintiffs have endured. Even if Holtzclaw had not been terminated at that point, the Chief's knowledge of a prior complaint of prejudiced and perverted conduct would have permitted the OCPD to confirm him as a suspect earlier in their investigation of the Ms. Morris' assault and terminate him before he had the opportunity to assault Ms. Lyles and Ms. Ligons. Because Bennett did not document Campbell's allegations and report them up the chain of command, no one further up the chain of command or in Sex Crimes saw any red flags in Holtzclaw's past when he was identified as the last officer to have had documented contact with Ms. Morris and to have run her for warrants. Therefore, the investigators believed they lacked sufficient evidence of Holtzclaw's potential involvement to justify a continued investigation after Ms. Morris signed the refusal to prosecute. As a result, the investigation ceased, and Holtzclaw assaulted three more women, including Plaintiffs Ligons and Lyles, before he was finally apprehended.

(Dkt. 197, pp. 21-22). However, Plaintiffs' argument in that regard is premised upon speculation, mischaracterization of evidence, and omission of relevant information.

To this end, Plaintiffs' counsel continues to ignore that it is the OCPD's interpretation of its Standard Operating Procedures that is relevant, not his. He fails to

explain how he is qualified to decide what should be a citizen's complaint under OCPD procedure 143 or a use of force investigation under OCPD procedure 150.01, et seq. Deputy Chief Jennings testified that because Ms. Campbell's complaint was about a use of force, it was treated as a use of force investigation (Ex. 1, Jennings Depo., pp. 62-63), not as a citizen's complaint.  Yet, Plaintiff's counsel insists otherwise. *See* Dkt. 197, pp. 6, 7, 8, 11, 12.

Plaintiffs' counsel also continues to misrepresent the facts of this case. For instance, he states: "Based on testimony of Detective Gregory, the six-year veteran of Sex Crimes [*see* Ex. 8, 9:18-10:2] who led the Holtzclaw criminal investigation, Holtzclaw escalated to assaulting Plaintiffs as a direct result of his getting away with the Campbell Incident." (Dkt. 197, p. 7).  However, Detective Gregory gave no such testimony. None of the pages of Gregory's deposition testimony cited by Plaintiff's contain any such statement.

Plaintiffs' counsel also misrepresents Ms. Morris's statement to the police on May 24, 2014.  There, she advised the officers she had been assaulted "two blocks from the City Rescue Mission" "three for four days ago." (Dkt. 197-15).  However, the AVL (automatic vehicle location) on all OCPD police cars was checked for May 20 and 21, 2014 and none were at that location. (Ex. 2, Bacy Depo., p. 100; Ex. 3, Wenzel Depo., p. 53). Yet Plaintiffs omit this information from their Motion. Additionally, Plaintiffs' counsel was repeatedly advised that the detectives of the Sex Crimes Division would not interview the alleged suspect until they had interviewed the victim. (Ex. 2, Bacy Depo., p.

97). Lastly, Plaintiffs fail to advise the Court that Ms. Morris denied her assault occurred on May 8th. (Ex. 4, Morris Depo., p. 60).

Plaintiffs' counsel further misrepresents Plaintiffs' Exhibit 28. (Dkt. 197, pp. 10-11). Nowhere does Captain Bacy state that his email meant that high ranking officers believed they had an OCPD officer involved case on their hands. (Ex. 2, Bacy Depo., p. 130-137). Plaintiffs' further counsel ignores the testimony of "high ranking OCPD officials." Major Wenzel denied Holtzclaw was a suspect until Ligons came forward. Because of his contact with Morris he was a "possibility." (Ex. 3, Wenzel Depo., pp. 85-87). Further, the photo lineup could have eliminated him as a suspect. (Ex. 3, Wenzel Depo., pp. 89-91). Holtzclaw was not a suspect and Major Wenzel would not have recommended he be interviewed between June 3rd and June 18th, 2014. (Ex. 3, Wenzel Depo., pp. 130-131).

Finally, Plaintiffs' counsel fails to advise the Court that, when Ms. Morris was shown the photo lineup on June 3, 2014 that contained the photographs of Holtzclaw, she first identified Officer Dutton as the assailant. (Ex. 5, Higginbottom Photo Lineup Form). He also fails to advise the Court that when Holtzclaw was interviewed on June 18th after Ligons came forward, he was asked about his stop of Morris. Unlike his stop of Ligons, which he admitted, he stated he did not recall Ms. Morris or this stop. (Ex. 6, Interview of Holtzclaw, pp. 25-26, 62-66).

Moreover, the convoluted nature of Plaintiffs' causation argument only serves to highlight the "extraordinarily tenuous nature" of Plaintiffs' position with regard to this element and Defendant Bennett's lack of personal participation in the alleged violation of

the Plaintiffs' constitutional rights. Additionally, Plaintiffs appear to want to apply a lesser, negligence standard to Defendant Bennett's conduct:

> In short, Bennett, by failing to carry out his obligation to document, investigate, and report up the chain of command Ms. Campbell's alleged allegations of prejudice and perversion, set in motion a series of events that resulted in the sexual assaults on these Plaintiffs.

(Dkt. 197, p.22). However, whether or not Bennett set in motion a series of events that resulted in the alleged violation of the Plaintiffs' constitutional rights is not the proper legal standard. As the Court noted: "The requisite causal connection is [only] satisfied if the defendant set in motion a series of events that the defendant **knew or reasonably should have known** would cause others to deprive the plaintiff of her constitutional rights." (Dkt. 190, p. 8, quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990), emphasis added, internal quotation marks omitted).

Regardless, even if Plaintiffs could cite to any new evidence establishing a question of fact as to the elements of personal participation and causation, that alone would not be sufficient to warrant reconsideration of this Court's Order. As discussed above, Plaintiffs must still demonstrate that Defendant Bennet acted with deliberate indifference to a substantial risk that Holtzclaw would violate constitutional rights.

In order to demonstrate deliberate indifference on the part of Defendant Bennett, Plaintiffs must show that he was subjectively aware of a substantial and objective risk that Holtzclaw would sexually assault others. The subjective element of the deliberate indifference test requires a showing of a "sufficiently culpable state of mind," amounting to a "deliberate indifference" to a substantial risk of serious harm. *Farmer v. Brennan*,

9

511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). *Id*. The

defendant "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Accordingly, Plaintiffs must show that Defendant Bennett subjectively knew of and

disregarded a substantial risk that Holtzclaw would sexually assault them or others like

them. Mere negligence – even gross negligence – is insufficient to support a claim of

deliberate indifference under § 1983. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d

1489, 1495 (10th Cir. 1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 and n. 7,

109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "[D]eliberate indifference is a **stringent**

**standard of fault**, requiring proof that [an] actor disregarded a known or obvious

consequence of his action." *Board of County Commissioners of Bryan County, Oklahoma*

*v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (emphasis added).

"It is obduracy and wantonness, not inadvertence or error in good faith," that violate the

Constitution. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251

(1986). Furthermore, in order to establish a failure to supervise claim, Plaintiffs "must

show that the defendant was adequately put on notice of prior misbehavior." *McClelland*

*v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979).

     Plaintiffs do not offer any new evidence or argument with regard to the issue of

deliberate indifference. Plaintiffs argue that:

> …assuming that Campbell did tell Bennett that Holtzclaw scared her to the
> point that she urinated on herself and she feared what he would do to the next
> Black person, a reasonable jury could infer that Bennett failed to investigate
> Ms. Campbell's allegations and report them up his chain of command *with*
> *knowledge* that Holtzclaw, as a police officer on patrol in Oklahoma City,

posed a substantial risk of harm to the rights of Black people, and particularly Black women.[1]

(Dkt. 197, pp. 20-21). However, this is merely a reiteration of Plaintiffs' deliberate indifference arguments set forth in their summary judgment briefing which this Court rejected. *See* Dkt. 159, pp. 26-27, 30, 34. As discussed above, it is not appropriate on a motion to reconsider to revisit issues already addressed or advance arguments that could have been and were raised in prior briefing, and Plaintiff's argument in this regard provides no valid basis for reconsideration of this Court's Order.

Nevertheless, there is no evidence in this case which would raise a reasonable inference of deliberate indifference on the part of Defendant Bennett. Bennett was confronted with a single alleged complaint that Holtzclaw allegedly used excessive force, and was allegedly prejudiced and allegedly "perverted" to Campbell. As set forth in Bennett's summary judgment briefing, that evidence is simply insufficient to have placed a reasonable officer in Bennett's position on notice that Campbell *meant* that Holtzclaw had sexually assaulted her. Furthermore, that single incident is insufficient to have placed a reasonable officer in Bennett's position on notice that Holtzclaw posed a substantial threat of harm to black women. More importantly, there is no evidence that Defendant Bennett himself subjectively recognized that Holtzclaw posed a substantial threat of harm

---

[1] Plaintiffs further argue that "[e]ven if a jury found itself unable to conclude that Bennett had such outright knowledge, a reasonable jury could certainly conclude that Bennett chose to maintain plausible deniability by refusing to investigate the Campbell Incident appropriately." (Dkt. 197, p. 20). However, that is not the appropriate test for deliberate indifference. Rather, as discussed above, Plaintiffs must prove that Defendant Bennett had actual knowledge that Holtzclaw posed a substantial risk of sexual assault to black women of harm

to black women. As such, there is no evidence that Bennett was deliberately indifferent to the alleged violations of these Plaintiffs' constitutional rights. Moreover, the chain of inferences necessary to support Plaintiffs' contention that they would not have been sexually assaulted by Holtzclaw but for Bennett's actions is simply too tenuous to support Plaintiffs' § 1983 supervisory liability claim against Bennett. *See Orange v. Burge*, No. 04 C 0168, 2008 WL 4425427, at \*5 (N.D. Ill. Sept. 25, 2008) (unpub); *Patterson v. Burge*, No. 03 C 4433, 2010 WL 3894433, at \*3 (N.D. Ill. Sept. 27, 2010) (unpub).[2]   Accordingly, Plaintiffs have failed to demonstrate sufficient grounds for reconsideration of the Court's Order granting summary judgment to Defendant Bennett and their Motion should be denied.

## III.    THE COURT DID NOT INVADE THE PROVINCE OF THE JURY.

Plaintiffs argue that the Court invaded the province of the jury by weighing the credibility of Ms. Campbell. (Dkt. 197, pp. 19-20).  However, Plaintiffs' argument in that regard is utterly unfounded. The only support which Plaintiffs offer for this argument is their bald assertion that "the Court appeared to minimize Campbell's testimony about Holtzclaw's racial prejudice by noting that she had filed her own lawsuit against the City." (Dkt. 197, p. 19). However, contrary to Plaintiffs' unsupported assertion, the Court made a single, fleeting reference to Ms. Campbell's lawsuit which does not call her credibility into question in any way.

Finally, plaintiffs contend Lt. Bennett's preparation of a supplemental report in September of 2015, addressing whether Ms. Campbell's initial

---

[2] Copies of these unpublished opinions were previously provided. (Dkt. 152-21, Dkt. 152-22).

comments to him included allegations of a sexual nature, is evidence of bias or conspiracy. The court concludes it is not. The evidence (some of it viewed by the court in camera) is that, **after Ms. Campbell's allegations in her separate lawsuit became known** and were included in plaintiff Ligon's state court amended petition, counsel for the City and other defendants requested a supplemental report from Bennett, through the chain of command, as to whether Ms. Campbell's 2013 description of events included anything about them being sexual in nature. The supplemental report stated Ms. Campbell's 2013 complaints about Holtzclaw were not sexual in nature. As noted above, a factual dispute exists as to what Ms. Campbell said to Lt. Bennett, but Bennett's preparation of a supplemental report which was consistent with his prior report and pursuant to the direction of his superiors, at the request of counsel, does not itself somehow suggest bias or entry into a conspiracy by Bennett.

(Dkt. 190, p. 11, emphasis added). The contention that this single, fleeting reference to Ms. Campbell's lawsuit somehow minimizes her testimony about Holtzclaw's racial prejudice or calls her credibility into question is ludicrous. Plaintiffs' argument that the Court has invaded the province of the jury is wholly without support and provides no basis for reconsideration of the Court's Order granting summary judgment to Defendant Bennett.

## IV.    BENNETT IS ENTITLED TO QUALIFIED IMMUNITY.

Because the Court found that there was no underlying constitutional violation by Defendant Bennett, it ended its qualified immunity analysis at that stage, finding that it was "unnecessary to make a further determination as to whether the qualified immunity defense, and the additional determinations involved with it, might also bar plaintiffs' claims." (Dkt. 190, pp. 13-14). Thus, if the Court should determine that Plaintiffs have presented any valid basis for reconsideration of its determination that they have not shown an underlying violation of their constitutional rights, Defendant Bennett urges the

Court to consider the qualified immunity issue as well. As set forth in Defendant Bennett's summary judgment briefing, Plaintiffs have failed to shoulder their heavy burden to demonstrate that Defendant Bennett's actions were in violation of clearly established rights.

Defendants sued in their individual capacities in an action under 42 U.S.C. § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). Qualified immunity is therefore an affirmative defense that provides immunity to suit in a § 1983 action. *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). When the defense is raised, the plaintiff bears the burden to show the defendant's actions violated a constitutional right, and that the allegedly violated right was clearly established at the time of the conduct at issue. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S.  511, 527, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). It is an immunity from suit rather than a mere defense to liability. *Id.*, 472 U.S. at 527. Qualified immunity gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct 532, 537, 116 .Ed. 2d 589 (1991). The issue of qualified immunity is for the courts and not the trier of fact. *Id*.

As a threshold matter, if no federal right on the facts alleged would have been violated, no further inquiry is required, and the defendant is entitled to dismissal. *Saucier*

*v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (*overruled in part, Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). If a violation of federal rights could be made out, then "[t]he relative, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official in the defendant's position] that his conduct was unlawful in the situation he confronted." *Id.* at 202; *see also Brousseau v. Haugen*, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (emphasizing inquiry should be conducted in light of the specific context of the case.)

Deciding when a right is "clearly established" is a crucial part of qualified immunity analysis. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted). "The question of whether a right is clearly established must be answered in light of the specific context of the case, not as a broad general proposition." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (internal quotations omitted). "The Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014), alterations omitted); *see also White v. Pauly*, 137 S.Ct. 548, 552, 196 L.Ed.2d 463

15

(2017). Thus, "a general statement of law...is not sufficient to show that the law was clearly established." *Gillen*, 761 F.3d at 1106.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klein v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "[T]he plaintiff's burden in responding to a request for judgment based on qualified immunity is to identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (citation and quotation marks omitted). While the court need not point to any prior authority which has precisely the same facts of this case in order to find clearly established law, existing precedent must "squarely govern" the case and "must have placed the statutory or constitutional question beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations and internal quotation marks omitted). "[C]learly established law must be 'particularized' to the facts of the case." *White*, 137 S.Ct. at 552.

Here, Plaintiffs rely solely on broad general propositions of law – *i.e.* that it is clearly established that it is unlawful to cover up governmental wrongs, that it was clearly established that law may not be enforced on a discriminatory basis, and that it was clearly

established that it is a violation for a supervisor to fail to act to remedy a subordinate's violation of rights. (*See* Dkt. 159). However, none of the cases cited by Plaintiffs in their summary judgment response brief (Dkt. 159) would have put Bennett on notice that his actions were in violation of the Plaintiffs' constitutional rights. Moreover, Plaintiffs failed to substantively respond to Bennett's argument that they cannot demonstrate that it was clearly established in November 2013 that Campbell's allegation that she told Bennett that Holtzclaw acted "perverted" to her and that she thought he had "other intentions" for her were sufficient to place a reasonable officer in Bennett's position on notice that Campbell *meant* that Holtzclaw had sexually assaulted her or were sufficient to place a reasonable officer in Bennett's position on notice that Holtzclaw posed a substantial risk of harm to women with whom he came into contact, such that Bennett could be said to have been deliberately indifferent thereto.  In light of the specific context of this case and the qualified immunity inquiry, Plaintiffs have failed to show that Bennett violated their clearly established, federal constitutional rights.

## CONCLUSION

For the reasons set forth above, "Plaintiffs' Motion to Alter or Amend Judgment in Favor of Defendant Brian Bennet" (Dkt. 197) should be denied.

Respectfully submitted,

s/ Ambre C. Gooch
Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN, & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105-1815
Telephone:    (405) 524-2070
Facsimile:     (405) 524-2078
E-mail: acg@czwlaw.com

ATTORNEY FOR DEFENDANT
BRIAN BENNETT

## CERTIFICATE OF SERVICE

I hereby certify that on June 17 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Melvin C. Hall - via electronic mail at: mhall@riggsabney.com
RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS, PC
528 N.W. 12th Street
Oklahoma City, OK 73103

Damario Solomon-Simmons - via electronic mail at: dsimmons@riggsabney.com
RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS, PC
502 West 6th Street
Tulsa, OK 74119

Benjamin L. Crump - via electronic mail at: bencrump@benccrump.com
Ben Crump Law, PLLC
122 S. Calhoun Street
Tallahassee, FL 32301
*Attorneys for Plaintiffs Terri Morris,*
*Carla Johnson, Kala Lyles, Jannie Ligons &*
*Shandayreon Hill*

18

Cody E. Gilbert - via electronic mail at: Gilbertlawok@gmail.com
BANKS, GILBERT AND BILLETT, PLLC
430 N.W. 5th Street
Oklahoma City, OK 73102
***Attorneys for Plaintiff Tabatha Barnes***

Richard C. Smith - via electronic mail at: rick.smith@okc.gov
Sherri R. Katz - via electronic mail at: sherri.katz@okc.gov
Assistant Municipal Counselor
200 North Walker, Suite 400
Oklahoma City, OK 73102
***Attorneys for Defendants The City of Oklahoma City,***
***Bill Citty and Rocky Gregory***

Nick Oberheiden - via electronic mail at: nick@federal-lawyer.com
Elizabeth K. Stepp - via electronic mail at: eks@federal-lawyer.com
OBERHEIDEN & MCMURREY, L.L.P.
5728 LBJ Freeway, Suite 250
Dallas, TX 75240

Kathleen T. Zellner - via electronic mail at: kathleen.zellner@gmail.com
Douglas H. Johnson - via electronic mail at: attorneys@zellnerlawoffices.com
Nicholas M. Curran - via electronic mail at: ktzemployees@gmail.com
Kathleen T. Zellner & Associates
1901 Butterfield Road, Suite 650
Downers Grove, IL 60515
***Attorneys for Defendant Daniel Holtzclaw***

s/ Ambre C. Gooch
Ambre C. Gooch